**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PAUL F.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 19 C 1594** |
| | ) | |
| **ANDREW M. SAUL,** | ) | **Magistrate Judge Finnegan** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Plaintiff Paul F. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After careful review of the record and the parties' respective arguments, the Court now grants the Commissioner's motion.

## BACKGROUND

Plaintiff applied for DIB on July 13, 2015, alleging disability since February 1, 2009 due to a bad back, diabetes, high blood pressure, and high cholesterol. (R. 156, 176). Born in March 1961, Plaintiff was nearly 48 years old as of the alleged disability onset date, and 51 years old as of his March 31, 2012 date last insured. (R. 156, 173). He has a high school diploma and worked for approximately 14 years as a general laborer and bath liner installer. (R. 32-33, 177, 202). In September 2008, Plaintiff was in a car

accident and broke some ribs. He asked to be placed on light duty work but since none was available, he was laid off effective February 1, 2009 and has not worked since then. (R. 37-38, 176).

The Social Security Administration denied Plaintiff's applications initially on August 11, 2015, and again upon reconsideration on October 22, 2015. (R. 65-79). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Victoria A. Ferrer (the "ALJ") on December 12, 2017. (R. 27). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Lee O. Knutson. (R. 29-54). On March 21, 2018, the ALJ found that Plaintiff's diabetes, obesity, hypertension, and hyperlipidemia did not alone or in combination significantly limit his ability to perform basic work-related activities for 12 consecutive months at any time prior to his date last insured ("DLI") of March 31, 2012. (R. 15-18). Since Plaintiff could not establish that he had any severe impairments during the relevant period, the ALJ concluded he was not disabled. (*Id.*). *See* 20 C.F.R. §§ 404.1509, 404.1520(c). The Appeals Council denied Plaintiff's request for review (R. 1-6), leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

In support of his request for reversal or remand, Plaintiff argues that the ALJ: (1) erred in finding that he had no severe impairments at step two of the sequential analysis; and (2) erred in failing to call a medical expert to testify about his limitations prior to his DLI. For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## DISCUSSION

**A.    Standard of Review**

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) of the Social Security Act (the "SSA").  In reviewing this decision, the court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security regulations.  *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  Nor may it "'displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.'"  *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)).  The court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)).

In making its determination, the court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to [his] conclusion that the claimant is not disabled."  *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)).  The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'"  *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)).  Where the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required."  *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.     Five-Step Inquiry**

To recover disability benefits under the SSA, a claimant must establish that he is disabled within the meaning of the SSA. *Snedden v. Colvin*, No. 14 C 9038, 2016 WL 792301, at *6 (N.D. Ill. Feb. 29, 2016). A claimant is disabled if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to law for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether [s]he can perform her past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

**C.     Analysis**

**1.     Severe Impairments**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in finding that his diabetes, obesity, hypertension, and hyperlipidemia were not severe impairments prior to the March 31, 2012 DLI. "A severe impairment is an impairment or combination of impairments that 'significantly limits [one's] physical or

mental ability to do basic work activities.'" *Castile*, 617 F.3d at 926. "The Step 2 determination is 'a *de minimis* screening for groundless claims' intended to exclude slight abnormalities that only minimally impact a claimant's basic activities." *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (quoting *Thomas v. Colvin*, 826 F.3d 953, (7th Cir. 2016)). "When evaluating the severity of an impairment, the ALJ assesses its functionally limiting effects by evaluating the objective medical evidence and the claimant's statements and other evidence regarding the intensity, persistence, and limiting effects of the symptoms." *Thomas*, 826 F.3d at 960 (citing SSR 96-3p, 1996 WL 374181, at *2 (July 2, 1996)).

Rather than address any of the objective medical evidence, Plaintiff argues that the ALJ failed to properly explain why she rejected Plaintiff's subjective statements – more specifically, his assertion that prior to the March 31, 2012 DLI, he was unable to stand for more than 20 minutes before needing to sit and rest for 30 minutes "as a result of his combined diabetes and obesity." (Doc. 13, at 6; Doc. 21, at 7). According to Plaintiff, this error requires remand because with a 20-minute standing limitation, the VE testified that he likely would be restricted to sedentary work which would render him per se disabled under the Medical-Vocational Guidelines as of his 50th birthday. (Doc. 13, at 9; Doc. 21, at 7; R. 61).

The regulations describe a two-step process for evaluating a claimant's own description of his impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2. If there is such an impairment, the ALJ must "evaluate the intensity and

persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* In evaluating a claimant's symptoms, "an ALJ must consider several factors, including the claimant's daily activities, h[is] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, . . . and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). An ALJ's assessment of a claimant's subjective complaints will be reversed only if "patently wrong." *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010).

In rejecting Plaintiff's statements regarding his standing and walking limitations prior to the March 31, 2012 DLI, the ALJ first observed that they were not supported by the objective medical notes, which "always revealed normal findings" despite Plaintiff's various diagnoses. (R. 17, 18). The Court finds no error in this assessment. The first available treatment note in the record is dated October 17, 2011, more than 2 1/2 years after the February 1, 2009 alleged disability onset date and less than 6 months prior to the March 31, 2012 DLI. The record shows that Plaintiff saw his primary care physician, William Imlach, D.O., due to a cough, sore throat, and headaches. (R. 257). His "Active Problems" included diabetes, hypertension, and hyperlipidemia, and his BMI was 33.74, but he did not make any complaints or receive any medical care related to those conditions. Instead, following a largely normal exam, Dr. Imlach diagnosed an acute upper respiratory infection. (R. 257-59).

Plaintiff returned to Dr. Imlach on December 19, 2011 for a check of his diabetes. His BMI remained high at 33.66, but his A1c reading was good (6.2%), and a physical

exam was normal with no complaints of pain, fatigue, or difficulty standing and walking.[1] (R. 255-56). On January 7, 2012, Plaintiff presented to one of Dr. Imlach's colleagues with sinus congestion and swelling/pain in the right side of his neck. (R. 17, 253). The doctor prescribed antibiotics. (R. 254). Plaintiff's throat problems continued and on January 24, 2012, he received a prescription for omeprazole (used to treat heartburn). Once again, Plaintiff did not request or receive treatment related to his diabetes, hypertension, hyperlipidemia or obesity, or report having problems with pain, fatigue, standing or walking. (R. 251-52).

All remaining treatment notes are dated after the March 31, 2012 DLI. Plaintiff had 3 more exams in 2012 where labs revealed good A1c readings (5.9 on April 16, 2012; 6.4 on July 16, 2012; and 5.9 on October 18, 2012). (R. 17, 499, 503, 516). Physical exams were largely normal with no evidence of foot sores, neuropathy, or problems with blood sugar, and Dr. Imlach made no modifications to Plaintiff's drug regimen. (R. 17, 501-02, 505, 507, 518-19). In fact, the only time in 2012 that Plaintiff ever mentioned having a concern about pain and movement was on April 16, 2012 when he reported to Dr. Imlach that he had been "horsing around" (probably with his friend Scott) and "fell and hurt his back." (R. 48, 518). Dr. Imlach did not prescribe any pain medication and by the next visit on July 16, 2012, Plaintiff had no complaints of recurring low back pain and was "[f]eeling fine" aside from some indigestion. (R. 505). Exams on October 18, 2012 and March 11, 2013 were similarly normal (A1c readings were 5.9 and 5.5, respectively) with Plaintiff saying nothing about pain, fatigue, or difficulty walking and standing. He even

---

[1]     "For most adults who have diabetes, an A1C level of 7 percent or less is a common treatment target." (https://www.mayoclinic.org/tests-procedures/a1c-test/about/pac-20384643) (last visited August 24, 2020).

told Dr. Imlach at the March 2013 visit that he was "doing well" and had no new complaints. (R. 16, 442, 444-46). Dr. Imlach found no foot abnormalities and instructed Plaintiff to continue his medications. (R. 442-44).

The first time Plaintiff sought medical care related to standing and walking was on May 31, 2013, more than a year after the March 31, 2012 DLI. Specifically, he reported that he had twisted his left knee. The knee was swollen and Plaintiff was almost unable to walk, but an x-ray showed only mild joint effusion. (R. 16, 439, 492). Dr. Imlach diagnosed an acute medial meniscus tear and gave Plaintiff his first prescription for an NSAID pain medication (Etodolac). (R. 440). At the next appointment on August 21, 2013, Plaintiff said he had been experiencing moderate to severe back pain for the previous 1 to 2 weeks. Notably, Plaintiff told Dr. Imlach he "does do heavy work with digging and concrete, and lifting." (R. 436).

Plaintiff fails to address any of this evidence or explain how it demonstrates that he was unable to stand for more than 20 minutes at a time – or suffered from severe impairments – prior to the March 31, 2012 DLI. *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008) ("The claimant bears the burden of producing medical evidence that supports her claims of disability."). Nor does he identify a single physician who opined that he had severe functional limitations before his eligibility for benefits expired. *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) (where the plaintiff's "claim of disability rest[s] mainly on her allegations concerning her symptoms," it "makes her burden difficult."). The mere fact that Plaintiff was diagnosed with obesity and diabetes prior to the DLI does not alone suffice to establish that either impairment was severe or disabling during that period. *Kenneth A. v. Comm'r of Soc. Sec.*, No. 4:18-CV-04131-JEH, 2019 WL 7546617,

at *9 (C.D. Ill. Sept. 20, 2019) ("[A] diagnosis alone is not enough to establish disabling limitations."); *Stanley v. Astrue*, No. 1:11-CV-00248, 2012 WL 1158630, at *8 n.8 (N.D. Ind. Apr. 6, 2012) ("[T]he diagnosis of an impairment does not alone establish its severity and its resulting limitations."). Contrary to Plaintiff's assertion, moreover, the ALJ expressly considered Plaintiff's obesity and diabetes in combination, and reasonably concluded that his statements regarding the limiting effects of those impairments prior to and well after the DLI were not supported by objective evidence. (R. 16, 18).

In the absence of any medical records supporting Plaintiff's claims, he nitpicks the ALJ's decision for errors in articulation. For example, Plaintiff objects to the ALJ's observation that he failed to follow Dr. Imlach's repeated admonitions to diet, exercise, and stop his alcohol and cigarette use. (R. 17, 18). Plaintiff argues that this was improper because such behavioral recommendations do not constitute "prescribed treatment." (Doc. 13, at 7; Doc. 21, at 5) (citing SSR 02-1p, 2002 WL 34686281, at *9) ("A treating source's statement that an individual 'should' lose weight or has 'been advised' to get more exercise is not prescribed treatment."). Plaintiff also faults the ALJ for placing too much emphasis on his ability to perform minimal household chores (as set forth in a July 27, 2015 Function Report) without explaining how the activities were inconsistent with his stated standing limitations. (Doc. 13, at 8-9; Doc. 21, at 6-7; R. 17, 188-95).

Any error the ALJ may have made in relying on these factors to discount Plaintiff's testimony was harmless since the ALJ provided some good reasons for her decision. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (reaffirming that harmless error applies to social security cases); *Dawson v. Colvin*, No. 11 C 6671, 2014 WL 1392974, at *10 (N.D. Ill. Apr. 10, 2014) (citing *Schreiber v. Colvin*, 519 F. App'x 951, 961 (7th Cir. 2013))

("The ALJ's credibility assessment need not be perfect; it just can't be patently wrong."). "[A] patient's subjective complaints are not required to be accepted insofar as they clashed with other, objective medical evidence in the record." *Thorps v. Astrue*, 873 F. Supp. 2d 995, 1006 (N.D. Ill. 2012) (citing *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007)). Plaintiff does not claim that he was unable to secure necessary treatment during the relevant period, or deny that the care he did receive was minimal. As discussed, there is no evidence that Plaintiff raised concerns with Dr. Imlach about his ability to stand and walk until more than a year after the March 31, 2012 DLI. And Plaintiff cites no evidence that he needed or received pain medication, or complained of fatigue, at any time prior to May 2013. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005) (no error in rejecting the plaintiff's complaints of headache pain where she never sought any treatment for them and none of the doctors who examined her imposed any specific limitations on her activities because of the headaches).

The Court recognizes that Plaintiff's condition deteriorated throughout late 2013 and 2014. He presented with ongoing back, knee, hip, and shoulder pain, and a November 19, 2014 MRI of the lumbar spine revealed multilevel spondylotic changes. (R. 356-57, 418, 421, 427, 434-35). In 2015, moreover, Plaintiff was referred to a pain specialist, he sought emergency room care for his back pain on three occasions (March 24, April 21 and May 2, 2015), and a neurologist recommended he have back surgery (L5-S1 right sided transforaminal lumbar interbody fusion). (R. 269-355, 407, 494, 497). But Plaintiff must prove the existence of a severe impairment causing disability prior to the DLI. *See Pepper*, 712 F.3d at 355 ("The critical inquiry is whether [the plaintiff]

became disabled at any time prior to . . . the date [the plaintiff] was last insured.").  For the reasons stated, the ALJ reasonably concluded that Plaintiff did not meet this burden.

The ALJ's decision in this case was not perfect, but neither was it patently wrong or unsupported by substantial evidence.  "As the Supreme Court observed fairly recently, substantial evidence is not a high standard, and requires only evidence that 'a reasonable mind might accept as adequate.'"  *Richard C. v. Saul*, No. 19 C 50013, 2020 WL 1139244, at *5 (N.D. Ill. Mar. 9, 2020) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).  Viewing the record as a whole, a reasonable mind can easily accept as adequate the ALJ's reasons for disbelieving Plaintiff's claimed standing limitations, and her conclusion that Plaintiff did not suffer from a severe impairment prior to the March 31, 2012 DLI.  Plaintiff's request for remand on these issues is denied.

### 2.    Medical Expert Testimony

Plaintiff argues that the ALJ still committed reversible error by failing to obtain testimony from a medical expert ("ME") regarding the severity of his impairments prior to the March 31, 2012 DLI.  An ALJ is only required to obtain medical expert testimony when the evidence received is inadequate to determine whether the claimant is disabled.  *Tasha C. v. Saul*, No. 18 C 4677, 2019 WL 6877190, at *8 (N.D. Ill. Dec. 17, 2019); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).  As discussed, the record is devoid of any medical evidence supporting Plaintiff's claimed limitations prior to the DLI.  Plaintiff concedes as much, but speculates that since he started having back pain in 2013, and a November 2014 MRI showed multilevel spondylotic changes, "it is likely that [he] had degenerative back problems prior to his DLI."  (Doc. 13, at 12; Doc. 21, at 10).  In Plaintiff's view, an ME needed to review all the post-DLI imaging and medical records to

determine whether those documents supported Plaintiff's claims of serious back pain pre-DLI.  (Doc. 13, at 12-13; Doc. 21, at 10).

The problem with this argument is that regardless of any post-DLI treatment notes and imaging studies, Plaintiff never complained of, or sought treatment for back pain at any time prior to the March 31, 2012 DLI.  *Cf. Anderson v. Berryhill*, No. 1:17-CV-00183-SLC, 2018 WL 3471160, at *5 (N.D. Ind. July 18, 2018) (MRI taken after the ALJ's decision could reasonably relate to the plaintiff's condition before that decision where the plaintiff repeatedly complained of back pain during the relevant period).  Plaintiff did complain of back pain in April 2012, but this was clearly an acute and short-lived event (Plaintiff hurt his back while "horsing around" and the pain had fully resolved by July 2012).  (R. 505, 518).  The mere fact that Plaintiff may have had degenerative changes in his back for many years prior to the DLI is not evidence that those changes constituted a severe impairment or disability in the absence of any related symptoms or functional limitations.

Given the dearth of medical evidence, Plaintiff once again focuses on errors of articulation.  He notes, for example, that State agency reviewers Julio Pardo, M.D., and Vidya Madala, M.D., both determined that there was insufficient evidence in the record to find that Plaintiff was disabled prior to the DLI.  (R. 68, 75-76).  The ALJ gave these opinions some weight but found that "later introduced evidence did not support a finding of disability" prior to the DLI.  (R. 18).  Yet the ALJ did not identify the "later introduced evidence."  (Doc. 13, at 10; Doc. 21, at 8).  Plaintiff argues this creates a logical flaw in the ALJ's decision that must be corrected on remand.  (*Id.*) (citing *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004).  The Court disagrees.  For the many reasons already

discussed, there is simply no evidence in the record to support Plaintiff's claim of severe limitations prior to the March 31, 2012 DLI. Though it is unclear what the ALJ meant by "later introduced evidence," on the record presented the ambiguity of this statement does not constitute a reversible error. *McKinzey*, 641 F.3d at 892 ("[W]e will not remand a case to the ALJ for further speculation where we are convinced that the ALJ will reach the same result.").

Similarly unavailing is Plaintiff's objection that the ALJ impermissibly "played doctor" by "determining the significance of particular medical findings" dated after the DLI (Doc. 13, at 10) (quoting *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)). As noted, Plaintiff produced no evidence from his treating physician or otherwise suggesting that medical findings from 2013 through 2015 rendered him severely impaired more than a year earlier at a time when he was not manifesting or complaining of any symptoms. *Compare Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) (remand necessary where the ALJ improperly rejected treating physician's opinion that the plaintiff was unable to do even sedentary work based on the ALJ's personal assessment that x-rays were essentially normal).

Viewing the record as a whole, the ALJ did not err in failing to obtain ME testimony. Plaintiff's request that the case be remanded for further consideration of this issue is denied.

## **CONCLUSION**

For the reasons stated above, Plaintiff's request to reverse or remand the ALJ's decision is denied, and the Commissioner's motion for summary judgment [19] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated:  August 24, 2020

_____
SHEILA FINNEGAN
United States Magistrate Judge